# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

CLEMON D. PARHAM,

        Petitioner,     :    Case No. 2:21-cv-5725

  - vs -                           District Judge Michael H. Watson
                                    Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,

                            :
        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action under 28 U.S.C. § 2254, brought by Petitioner Clemon Parham with the assistance of counsel.  Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 9), Respondent's Return of Writ (ECF No. 10), and the Traverse (ECF No. 18).  The Magistrate Judge reference in the case was randomly transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 7).

**Litigation History**

On October 28, 2013, a Franklin County Grand Jury indicted Parham on one count of aggravated robbery (Count 1) and two counts of aggravated murder (Counts 2 and 3)(Indictment, State Court Record, ECF No. 9, Exhibit 1).  The case was tried to a jury which convicted Parham of aggravated robbery and the murder of Kevin Connal and not guilty of the offenses charged in Count III of the Indictment (Verdicts, State Court Record, ECF No. 9).  Parham appealed to the Ohio Tenth

1

District Court of Appeals which affirmed. *State v. Parham,* 2019-Ohio-358 (Feb. 5, 2019), appellate jurisdiction declined, 155 Ohio St.3d 1469 (2019). On May 3, 2019, while his direct appeal was still pending, Parham filed an Application for Reopening of the Appeal, charging appellate counsel with ineffective assistance of appellate counsel (Application, State Court Record, ECF No. 9, Ex. 26). The Tenth District denied the Application. *Id.* at Ex. 28, appellate jurisdiction declined, *Id.* at Ex. 32. Parham then filed his Petition for Writ of Habeas Corpus in this Court on December 11, 2021.[1] He pleads the following Grounds for Relief:

> **GROUND ONE**: The Prosecutor knowingly used false evidence.
>
> **Supporting Facts**: Prior to trial, Parham's former attorney, John Rutan, during a bond hearing made false statements to the effect that Parham admitted he was present during the murder of Kevin Connal. Parham filed a notice of alibi. The prosecutor informed defense counsel that she intended to use Mr. Rutan's statements from the bond hearing as admissions against interest. Prior to trial, Defense counsel put the prosecutor on notice that Mr. Rutan's statements about Parham being present during the murder of Kevin Connal were false, that Parham was not the source of Mr. Rutan's false information, that Parham never authorized Mr. Rutan to make those statements and requested the prosecutor to speak with Mr. Rutan to avoid placing false and misleading statements into the record. The prosecutor never contacted Mr. Rutan to verify defense counsel's assertions. At trial, over objection, the trial court permitted the prosecutor [to] cross examine Parham about Mr. Rutan's false statements made during the bond hearing. Ohio's adjudication of this issue resulted in a decision that was contrary to or an unreasonable application of *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) and *Napue v. Illinois*, 360 U.S. 26 (1959).
>
> **GROUND TWO**: Ineffective Assistance of Appellate Counsel
>
> **Supporting Facts**: Appellate Counsel rendered deficient performance when they failed to present a proposition of law premised on the grounds that:
>
> Attorney Rutan rendered ineffective assistance of counsel during a bond hearing when he made false statements to the effect that

---

[1] The Return indicates Parham filed *pro se* (ECF No. 10, PageID 3061), but the Petition shows it was filed by Attorney Yeazel (ECF No. 1, PageID 36).

Parham admitted he was present during the murder of Kevin Connal. Parham was prejudiced by attorney Rutan's false statements because they were used to impeach Parham at trial.

Parham was prejudiced [by] his appellate counsels' failure to present the above-proposed assignment of error in that appellate counsels' failure to act fell below the minimal standard of competency and there is a reasonable probability the deficient performance of counsel undermines one's confidence in the outcome of the direct appeal. Ohio's adjudication of this issue resulted in a decision that was contrary to or an unreasonable application of *Evitts v. Lucey*, 469 U.S 387 (1985).

**GROUND THREE**: Prosecutorial Misconduct

**Supporting Facts:** The lead prosecutor, Ms. Moore, engaged in misconduct by communicating by innuendo through questioning witnesses when she had no evidence to support the innuendo. She asked leading questions and suggesting the answers she wanted in her leading questions. For example, when questioning Antoine Dotson, Ms. Moore asked him who was the leader between Parham and Wallington. After sustaining Parham's objection, Ms. Moore repeated the question with the same leading assertion, improperly suggesting that Parham controlled Wallington. When questioning Aaliyar Dunson, Ms. Moore continually suggested that Parham had admitted his involvement in the beating death of Connal. However, on cross-examination, Mrs. Dunson admitted that all she had overheard was Parham telling her husband that there had been a beating, and she did not know if Parham was involved. On re-direct Ms. Moore continued to badger Mrs. Dunson by suggesting Parham admitted being involved in the death [of] Connal.

When questioning prosecution witness Greg Dunson, Ms. Moore led him through his answers by continually asking him yes-or-no questions. Dunson was persuaded to testify against Parham, whom he called his best friend, by Ms. Moore's promises of favorable treatment in the plea bargain of his felony cases. But Ms. Moore's favorable treatment of Dunson went beyond simply negotiating a better plea deal. Dunson admitted Ms. Moore picked him [up] on at least two occasions in her personal vehicle, and just the two of them went to restaurants to prepare his testimony for trial. When finished testifying for the day, Ms. Moore drove Dunson back to his motel room. Dunson also acknowledged that when he was unable to pay his personal defense attorney, Ms. Moore told him she would get his attorney appointed so that Dunson wouldn't have to pay him. In addition to questionable contact with Mr. Dunson, during trial and

3

before Dunson testified, Ms. Moore reviewed video with him which another witness had already testified about in an effort to corroborate the prior testimony.

When cross-examining Steven Simon, defense counsel had to object in order to stop Ms. Moore from giving testimony. Later in her questioning, Ms. Moore again stated the answer she desired in her question, even though it was something the witness previously denied knowing. After learning Mr. Simon refused to testify from the summary of his interview prepared by the State, Ms. Moore intimidated him, had him detained in a room and was somehow involved with the threatened revocation of his probation.

Ms. Moore also gave the jury the impression Parham admitted he was present at the time of Connal's murder. Ms. Moore used the transcript from Parham's bond hearing in which his former attorney made an unauthorized and incorrect statement to [the effect] that Parham was present, which she told the jury should be attributed to Parham as an admission against interest. See, facts supporting Ground One outlined above.

The prosecution's acts and omissions denied Mr. Parham his right to a fair trial and sentencing proceeding. Ohio's adjudications of this issue resulted in a decision that was contrary to or an unreasonable application of *Berger v. United States*, 295 U.S. 78, 88 (1935).

**GROUND FOUR**: The prosecution's presentation of historical cell-site analysis was not sufficiently reliable for admission at trial.

**Supporting Facts**: At trial, prosecution witness Columbus Police Detective Robert Moledor was permitted to testify as an expert in cell tower location and call detail record interpretation. The purpose of Det. Moledor's testimony and reports were [sic] to establish probable locations of Parham's and the victims' cellphones at times of the murders. Det. Moledar [sic] admitted that his reports were incomplete and could be misleading. Det. Moledor also admitted that his reports did not contain completely accurate information. Det. Moledor admitted that the methodology employed by the Cellular Analysis Survey Team ('CAST") has no established standards by which to measure its accuracy and reliability, and has no known error-rate or industry peer review. The methodology employed by Det. Moledor utilized only selected data from cell providers and his personal assumptions resulting in inaccurate and unreliable results being presented to the jury. Ohio's adjudication of this issue resulted in a decision that was contrary to or an unreasonable application of *Daubert v. Merrell Dow Pharms.*, Inc.,

4

509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

(Petition, ECF No. 1).

# Analysis

**Ground One: Prosecutorial Misconduct: Knowing Use of False Evidence**

In his First Ground for Relief, Parham asserts the prosecutor knowingly used false evidence to wit, the statement of Attorney John Ruhan at a bond hearing when he was representing Parham in this case that Parham was present during the homicide. This issue was presented to the Tenth District Court of Appeals as a question of evidence law and not an assertion of prosecutorial misconduct as is made here. The Tenth District decided the claim as follows:

> {¶ 46} By Parham's fourth assignment of error, he argues that the trial court erred in allowing the State to question him regarding a statement his former attorney made during a bond hearing. We disagree.
>
> {¶ 47} Approximately four months after the trial court set Parham's appearance bond at $ 1.5 million, Parham's attorney, John Rutan, moved for a reduction in the bond amount. At the hearing on the motion, Rutan argued for lower bail on the basis that the facts did not support a charge of premeditated murder. In summarizing the facts for the trial court, Rutan stated:
>
>> In fact, what happened is the victim came to Ohio to meet with Mr. Parham, to go to clubs, to do things of that nature. During the day, they hung out, going around and this, that, and other, here's this place, here's this bar.
>>
>> Around 11:00 at night, Mr. Parham is driving. One of the codefendants is in the front seat; the victim is in the back, and he pulls in his neighborhood. During this time, he runs into this Mr. Dotson guy, the culprit. He hops in the car. Where are you going to go?
>>
>> Oh, we're going to go to the codefendant's girlfriend's.

> That's why the body was found in that neighborhood, not because it was an elaborate plan. What happens, as they are driving there, Mr. Dotson decides to overreact. That guy -- that guy took 40 grand, 50 grand, whatever. Ah, hell, no. Pulls out a weapon, starts beating.
>
> Parham[:] uh-oh, what's the hell this guy doing with a gun? Doesn't realize at the time the guy was beaten to death * * *.
> * * *
> [I]t's not murder, just because you don't stop a crime from happening. He may not be the best human being in the world, but that doesn't justify a million dollar, two million dollar bail. The reality of it is he didn't commit murder. He didn't commit premeditated murder. **Does he have knowledge about the incident? Yes. Was he present? Sadly.** But the bottom line is, was he the one initiating it? Starting it? It makes no sense. (Emphasis supplied.)

(Apr. 15, 2014 Hearing Tr. at 5-6.) After the bond hearing, Parham fired Rutan and obtained different representation.

{¶ 48} At trial, Parham testified that he was not present when Connal was beaten to death. Upon hearing that testimony, the state informed the trial court and defense counsel that it intended to cross-examine Parham regarding the statement his former attorney had made during the bond hearing. Parham's counsel objected, arguing that the statement was inadmissible hearsay. The state responded that the statement fell within the exception to hearsay contained in Evid.R. 801(D)(2) because it constituted an admission by a party-opponent. The trial court overruled Parham's objection and permitted the state to proceed with its questioning. The state's attorney then asked Parham, "[D]id your attorney, on your behalf, tell the court that you were present at the place and time of the Kevin Connal beating and subsequent homicide?" (Tr. Vol. X at 274.) Parham answered, "I believe he said something along those lines." *Id.*[2]

{¶ 49} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Certain types of statements may fit the definition of hearsay but, nevertheless, are not hearsay pursuant to Evid.R. 801(D). Relevant to this case, under Evid.R. 801(D)(2)(d), a statement is not hearsay if it "is offered against a party and is * * * a statement by the party's

6

agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

{¶ 50} Trial courts have broad discretion to determine whether a statement is admissible under a hearsay exception. *State v. Dever*, 64 Ohio St.3d 401, 410, 596 N.E.2d 436 (1992). An appellate court will not disturb such an evidentiary ruling absent a clear abuse of discretion and a showing that the appealing party was materially prejudiced by the ruling. *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001); accord *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 97 ("Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion.").

2526{¶ 51} Attorneys are agents for their clients. *State v. Waddy*, 10th Dist., 2016-Ohio-4911, 68 N.E.3d 381, ¶ 56; *Boddie v. Van Steyn*, 10th Dist. No. 13AP-623, 2014-Ohio-1069, 2014 WL 1347222, ¶ 13; accord *Ferron v. Ray*, 10th Dist. No. 00AP-699 (Dec. 21, 2000) ("An attorney-client relationship is, by its very nature, a relationship where the client controls the actions of the attorney, subject to the ethical constraints incumbent upon the attorney * * *."). Consequently, under Evid.R. 801(D)(2)(d), " 'statements made by an attorney concerning a matter within the employment may be admissible against the party retaining the attorney.' " *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir.1986), quoting *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir.1981); accord *United States v. Gordon*, 4th Cir. No. 17-4483, 754 Fed.Appx. 171, 2018 WL 5840511 (Nov. 7, 2018); *Fester v. Farmer Bros. Co.*, 49 Fed.Appx. 785, 797 (10th Cir.2002); *State v. Douglas*, 164 Ohio App.3d 467, 2005-Ohio-6144, 842 N.E.2d 1073, ¶ 58 (6th Dist.); *State v. Haynes*, 9th Dist. No. 13258, 1988 WL 29814 (Mar. 9, 1988).[3] Even more specifically, a trial court may admit pretrial statements made by counsel, which have been added to the record in the course of pretrial proceedings, under Evid.R. 801(D)(2)(d). *United States v. Butler*, 496 Fed.Appx. 158, 160-61 (3d Cir.2012).

{¶ 52} Here, Rutan represented Parham during the bond hearing in which Rutan made the disputed statement. Rutan made the statement in the course of arguing that the trial court should reduce Parham's bond. The statement, therefore, is a statement by Parham's agent concerning a matter within the scope of the agency, made during the existence of the agency relationship. Thus, the trial court did not err in permitting the state's attorney to cross-examine Parham regarding Rutan's statement.

7

> {¶ 53} In arguing to the contrary, Parham contends that Rutan did not have authority to admit to Parham's liability. This argument misconstrues Rutan's statement. Rutan only conceded to Parham's presence at the scene of the murder; he did not state that Parham committed the murder.
>
> {¶ 54} Additionally, for a statement to qualify as an admission under Evid.R. 801(D)(2)(d), the principal need not impart specific authorization to make the damaging statement; it need only authorize the agent to take action regarding the matter to which the statement relates. *Mowery v. Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio-1153, 2006 WL 620902, ¶ 59. Parham authorized Rutan to represent him at the bond hearing and advocate for a lower bail amount. Rutan made the disputed statement trying to convince the trial court to reduce Parham's bail. While Rutan's argument failed, the factual statements he made related to that argument. Consequently, Evid.R. 801(D)(2)(d) exempts Rutan's statement from the hearsay prohibition.
>
> {¶ 55} Finally, Parham maintains that Rutan's statement is inadmissible because it is protected by the attorney-client privilege. We reject this argument because the record does not support that Rutan relied on any communication from his client when stating that Parham was present when Connal was beaten. During his trial testimony, Parham denied telling Rutan that he was present. Rutan testified that he could not recall how he learned of Parham's presence, but it was not from Parham. Thus, the attorney-client privilege is inapplicable here.
>
> {¶ 56} In sum, we find no error in trial court's decision to allow the state to question Parham regarding Rutan's statement. Accordingly, we overrule Parham's fourth assignment of error.

*State v. Parham, supra.* It is very clear that the Fourth Assignment of Error was argued on direct appeal as a claim of trial court error in applying the hearsay rule and not prosecutorial misconduct.

When he reached the stage of applying for reopening his direct appeal, Parham raised this claim as one of ineffective assistance of appellate counsel, rather than prosecutorial misconduct. Of course Rule 26(B) proceedings are limited to claims of ineffective assistance of appellate counsel. *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). In the 26(B) Application he asserted appellate counsel was ineffective for not claiming Attorney Rutan provided ineffective assistance

8

of trial counsel because he fabricated Parham's supposed admission to being present (Application, State Court Record, ECF No. 9, Ex. 26, PageID 443). He then claimed ineffective assistance of appellate counsel for failure to raise as an assignment of error the trial court's error in admitting the evidence of the admission. *Id.* at PageID 447. Conceding that the issue had been raised on direct appeal, Parham faulted his appellate attorney for not making a constitutional issue out of it. *Id.*

In denying the 26(B) Application, the Tenth District noted that Attorney Rutan did not admit fabricating Parham's admission of being present, but identified his source as statements from the prosecutor and discovery. As to the second assignment of error – failure to "constitutionalize" the issue – the court found the argument actually made – evidentiary error under Ohio R. Evid. 801(D)(2) – was stronger than any constitutional claim and therefore it was not ineffective assistance of appellate counsel to frame the issue in that way. Judge Klatt also noted that there had been no trial court objection on constitutional grounds. *Id.* at PageID 501.

Coming to federal court, Parham again changes his target. Instead of trial court error, the target on direct appeal, or appellate counsel ineffectiveness, the 26(B) target, he relies on the same facts to claim prosecutorial misconduct.

Parham responds to the procedural default defense by claiming he "raised this ground as proposed Assignment of Error 2 in his application to reopen." However, omitted assignment of error two is premised on ineffective assistance of appellate counsel, not prosecutorial misconduct. If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not

9

save it).

Moreover, Parham's prosecutorial misconduct claim is without merit. He accuses the prosecutor of using false evidence. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell,* 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).

Parham claims the statement that he was at the scene of the crime is false. But he has not proven it was false. His claim of being elsewhere was his alibi, but the jury obviously did not believe it – it convicted him despite his testimony he was elsewhere.

Second, he has not proven the prosecutor knew it was false. She had it on good authority – Parham's trial attorney – that he was at the scene. Given Rutan's statement at the bail hearing to that effect, she certainly had a good faith basis for asking the question. No doubt the statement was material, but it fails the other two prongs of the *Napue* test.

In sum, Parham's Ground One should be dismissed. It is procedurally defaulted because

10

it was not presented on the same theory at earlier stages of the case. And it is without merit: Parham now claims the statement was false, but he has not proven that nor has he proven the prosecutor knew it was false. A defendant's alibi claim is not self-proving and the prosecutor was entitled to rely on Attorney Rutan's admission.

**GROUND TWO**: **Ineffective Assistance of Appellate Counsel**

In his Second Ground for Relief, Parham claims his appellate attorney provided ineffective assistance of appellate counsel when he failed to claim that Attorney Rutan provided ineffective assistance of trial counsel by stating during the bond hearing that Parham admitted he was present during the murder.

The standard for evaluating claims of ineffective assistance of appellate counsel is the same standard as applied at the trial level: a petitioner must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).

To begin with, a claim that Attorney Rutan stated at the bond hearing that Parham admitted he was present would have been false: Rutan admitted Parham was present, but he did not claim Parham was the source of that information. The bond reduction hearing occurred April 15, 2014. If Rutan had by that time filed the Notice of Alibi on Parham's behalf and then admitted that Parham was present at the murder scene, we would have a very different ineffective assistance of trial counsel case: Rutan would have admitted that a key element of the alibi defense – the location of the defendant at the time of the crime – was not what was claimed in the Notice of Alibi. But

11

that is not what happened. The Court takes judicial notice that the Notice of Alibi was filed by Attorney Landusky on August 15, 2016[2], more than two years after the bond reduction hearing and by different counsel. Making an admission in 2014 which turns out to be inconsistent with a defense chosen by a different attorney two years later is not *ipso facto* deficient performance. If Parham and Rutan had agreed on an alibi defense prior to the bond hearing, we would also have a different case, but there is no showing to that effect. There is no evidence of strategic discussions between Parham and Rutan about an alibi defense.

At a more fundamental level, of course, is the claim that the admission by Rutan of Parham's presence at the crime scene was false. See Statement of Supporting Facts for Ground Two. We have no proof to that effect except Parham's testimony at trial, which the jury plainly rejected.

Ground Two is without merit and should be dismissed with prejudice.

**GROUND THREE**: **Prosecutorial Misconduct**

In his Third Ground for Relief, Parham returns to the theme of prosecutorial misconduct and accuses the lead prosecutor of engaging in misconduct in the following ways:

1. Using leading questions to suggest factual conclusions for which she had no evidence.

2. Asking leading questions of prosecution witness Greg Dunson which could be answered yes or no when she had provided special and unusual privileges to Dunson.

3. Asking leading questions of defense witness Steven Simon.

---

[2] Docket in *State v. Parham,* Case No. 2013-CR-5703, https://fcdcfcjs.co.franklin.oh.us, visited October 3, 2022. Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice. *United States ex rel Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003). A federal district court is permitted to take judicial notice of another court's website. *Graham v. Smith*, 292 F. Supp. 2d 153, 155, n.2 (D. Me. 2003); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821 (E.D. Mich. 2004).

4. Giving the jury the impression Parham had admitted being present at the murder scene by relying on Rutan's admission at the bond hearing.

Parham argues these acts collectively amount to prosecutorial misconduct, relying on *Berger v. United States*, 295 U.S. 78, 88 (1935).

Respondent reminds the Court of the limitation in habeas corpus to claims fairly presented to the state courts, noting that Parham presented his prosecutorial misconduct claim to the Tenth District Court of Appeals as his Second Assignment of Error. That court decided that Parham had received a constitutionally fair trial despite his allegations of prosecutorial misconduct. *State v. Parham*, 2019-Ohio-358, ¶¶ 57-75 (Ohio App. 10th Dist. Feb. 5, 2019).

In each instance complained of by Parham in his Third Ground for Relief, the Tenth District found either that the prosecutor's conduct was not improper or it caused no prejudice to Parham. In particular the Tenth District held it was not improper to use Attorney Rutan's admission as a predicate for cross-examining Parham because the trial court had held the statement was admissible under Ohio R. Evid. 802(D)(1), a holding the Tenth District affirmed.

Prosecutorial misconduct justifies federal habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process" and resulted in prejudice. *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. (citation omitted). Even if the prosecutor's conduct was improper or even "universally condemned," *id*., we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair. Once we find that a statement is improper, four factors are considered in determining whether the

13

> impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).

> On habeas review, "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 40 L. Ed. 2d 431, 94 S. Ct. 1868 (1974)). "Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). Yet reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997); see also *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000), overruled on other grounds by, *Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-

94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. While Parham acknowledges that this is the correct standard of review under Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), he does not suggest any Supreme Court precedent to which the Tenth District's decision is contrary or of which it is an unreasonable application (See Traverse, ECF No. 18, PageID 3126-27). The Tenth District's decision of the claim of prosecutorial misconduct is entitled to deference. Ground Three should therefore be dismissed.

**Ground Four: Unreliability of Historical Cell-Site Analysis**

In his Fourth Ground for Relief, Parham claims the prosecution's presentation of historical cell-site analysis was not sufficiently reliable for admission at trial. Columbus Police Detective Robert Moledor testified as an expert in cell tower location and call detail record interpretation to establish probable locations of Parham's and the victims' cellphones at times of the murders. Parham claims admission of this testimony was an unreasonable application of *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In deciding the relevant assignment of error on direct appeal, the Tenth District adopted the framework for analysis of expert evidence the Supreme Court laid out in *Daubert*. *Parham, supra*, §§ 29-45. It was certainly free to do so, just as the Supreme Court of Ohio was free to adopt, in modified form, Fed. R. Evid. 702. But *Daubert* and *Kumho Tire* are not constitutional decisions; the Supreme Court has never held those decisions are binding on the States under the

15

Constitution.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

In response Parham claims

> State court rulings on the admissibility of evidence may be questioned in a federal habeas corpus proceeding, if they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir.1976). This assessment requires examining both the reliability of the evidence and the significance it had at trial. See, *Williamson v. Ward*, 110 F.3d 1508, 1523 (10th Cir. 1997).

Traverse, ECF No. 18, PageID 3128. Importantly, *Bell v. Arn* was handed down twenty years before enactment of the AEDPA which expressly provides that we may look only to the holdings of the Supreme Court to determine constitutionality. "We have explained that "'clearly established Federal law' for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U. S., at ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698, 704 (some internal quotation marks omitted). *Woods v. Donald*, 575 U.S. 312 (2015)(per curiam GVR), reversing *Donald v. Rapelje,* 580 Fed. Appx. 277 (6th Cir. 2014), followed in *Virginia v. LeBlanc,* 582 U.S. ___, 198 L. Ed. 2d 186 (2017)(GVR). The Magistrate Judge is unaware of any Supreme Court case in which it is even suggested that failure to satisfy *Daubert* renders the admission of

16

evidence unconstitutional. Ground Four is therefore without merits and should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 3, 2022.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge